**HUBBELL, Appellee,**

v.

**CITY OF XENIA, Appellant.**

[Cite as *Hubbell v. Xenia*, 175 Ohio App.3d 99, 2008-Ohio-490.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2005CA0099.

Decided Feb. 8, 2008.

Michael P. McNamee and Gregory B. O'Connor, for appellee.

Lynette Pisone Ballato and Tabitha Justice, for appellant.

GRADY, Judge.

{¶ 1} This is an appeal from an order of the court of common pleas that denied a Civ.R. 56 motion for summary judgment filed by defendant-appellant, the city of Xenia, Ohio, on its defense of governmental immunity to a claim for relief for negligence in an action filed by plaintiff-appellee, Dottie Hubbell.

{¶ 2} Previously, we dismissed Xenia's appeal on a finding that an order denying a motion for summary judgment is not a final, appealable order. *Hubbell v. Xenia*, 167 Ohio App.3d 294, 2006–Ohio–3369, 854 N.E.2d 1133. We subsequently granted Xenia's App.R. 25 motion to certify a conflict between our judgment and the judgments of the courts of appeals for other districts. The Supreme Court of Ohio reversed our judgment, holding that an order that denies the benefit of an alleged governmental immunity is a final, appealable order pursuant to R.C. 2744.02(C). *Hubbell v. Xenia*, 115 Ohio St.3d 77, 2007–Ohio–4839, 873 N.E.2d 878. That matter is again before us for decision on remand from the Supreme Court.

{¶ 3} On June 12, 2003, water and sewage began flowing into Hubbell's home in Xenia through drains in a shower, a toilet, and a bathroom sink. The sewage included human waste, tampons, and cigarette butts.

{¶ 4} Believing that the problem was likely caused by a malfunction in the public sewer system maintained by Xenia, to which her house was connected, Hubbell placed a telephone call to an emergency services number provided by the city of Xenia public services department. That office had then closed for the day, and the call automatically transferred to the Xenia police department, which paged an on-call sewer and waste maintenance worker, William Buckwalter. Buckwalter declined to act, suspecting that the problem was likely the result of heavy rainfall that day.

{¶ 5} The sewage and dirty water continued to flow into Hubbell's home, damaging the house and its contents. Hubbell placed a second call for help several hours after her first call was placed. This time, Buckwalter decided to respond and investigate the problem, and a service crew was brought in.

{¶ 6} Hubbell's home is situated at the intersection of Monroe and Home Avenues in Xenia. Hubbell's home is connected through her private line to the

public sewer main on Home Avenue, which is connected to a public sewer main on Monroe Avenue. The service crew examined the Home Avenue main line and found it was flowing freely. When a manhole cover on the Monroe Avenue line was removed, the back-up into Hubbell's house promptly subsided. Further investigation revealed a partial blockage in the Monroe Avenue main, which was removed. Several days later, tree roots that had invaded the main were cut away. There is evidence that the roots may have contributed to the blockage.

{¶ 7} Xenia offered to clean Hubbell's home, and Hubbell accepted the offer. However, she concluded that the results were unsatisfactory and terminated Xenia's efforts. Hubbell thereafter commenced the underlying action against Xenia for damages to her property that proximately resulted from the backup.

{¶ 8} Hubbell's complaint alleged that Xenia was negligent in maintaining and operating its sewer line because it failed to inspect the Monroe Street main, allowing the line to become obstructed and clogged by tree roots and collected refuse, causing the backup into her home. Hubbell further alleged that the condition constituted a nuisance for which Xenia is liable.

{¶ 9} Xenia filed an answer and jury demand. Xenia denied most of the factual allegations of Hubbell's complaint. Xenia also pleaded a number of affirmative defenses, including immunity from Hubbell's claims for relief pursuant to the Political Subdivision and Tort Liability Act, R.C. 2744.01 et seq. Subsequently, Xenia filed a Civ.R. 56 motion for summary judgment on that immunity defense. The trial court denied the motion. Xenia filed a timely notice of appeal.

ASSIGNMENT OF ERROR

{¶ 10} "The trial court's decision to deny [R.C.] Chapter 2744 immunity to the city of Xenia was in error."

{¶ 11} In *Doud v. Cincinnati* (1949), 152 Ohio St. 132, 39 O.O. 441, 87 N.E.2d 243, the Supreme Court held:

{¶ 12} "Where a municipal corporation uses and assumes the management and control of a sewer within the municipality, it is required to exercise reasonable diligence and care to keep the same in repair and free from conditions which will cause damage to private property; and the municipality's failure in this respect makes it liable for damages caused by its negligence, in the same manner and to the same extent as a private person under the same circumstances." Id. at paragraph two of the syllabus.

{¶ 13} A municipal corporation's alleged liability is nevertheless subject to the defense of governmental immunity provided by R.C. 2744.01 et seq. Upon an invocation of that defense, the court must apply a three-tier analysis. The first step is to determine whether the claimant is a political subdivision within the coverage of R.C. 2744.01 et seq. The second is to determine whether any of the

five exceptions to immunity in R.C. 2744.02(A)(1) apply. If one or more does, the third step is to determine whether one of the defenses in R.C. 2744.03 applies. *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 697 N.E.2d 610.

{¶ 14} It is undisputed that Xenia is a political subdivision. The questions that Xenia's motion presents implicate the second and third prongs of the *Cater* inquiry. Further, those questions must be resolved in the context of the Civ.R. 56 motion for summary judgment that Xenia filed.

{¶ 15} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ.R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. *Morris v. First Natl. Bank & Trust Co.* (1970), 21 Ohio St.2d 25, 50 O.O.2d 47, 254 N.E.2d 683. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825. Further, the issues of law involved are reviewed de novo. *Nilavar v. Osborn* (1998), 127 Ohio App.3d 1, 711 N.E.2d 726.

{¶ 16} Among the "proprietary functions" of a political subdivision are "[t]he maintenance, destruction, operation, and upkeep of a sewer system." R.C. 2744.01(G)(2)(d). "[P]olitical subdivisions are liable for injury, death, or loss to person[s] or property caused by the negligent * * * acts [of] their employees with respect to propriety functions of the political subdivisions." R.C. 2744.02(B)(2). Political subdivisions are nevertheless immune from such liability when the injury or loss concerned "resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner." R.C. 2744.03(A)(5).

{¶ 17} In *Addis v. Howell* (2000), 137 Ohio App.3d 54, 60, 738 N.E.2d 37, we wrote:

{¶ 18} "If an *act of discretion* is merely a choice between alternate courses of conduct, then almost every volitional act or omission involves an exercise of discretion. R.C. 2744.03(A)(5) cannot be interpreted that broadly, for to do so would comprehend anything and everything a political subdivision might do. Routine decisions requiring little judgment or discretion are not covered by the section. *Perkins v. Norwood City Schools* (1999), 85 Ohio St.3d 191, 707 N.E.2d 868. In our view, nor are those decisions which involve inadvertence, inattention, or unobservance. Some positive exercise of judgment that portrays a considered

adoption of a particular course of conduct in relation to an object to be achieved is required in order to demonstrate an exercise of discretion for which R.C. 2744.03(A)(5) confers immunity from liability on a political subdivision."

{¶ 19} The particular cause of the backup of sewage into Hubbell's home remains undetermined. Hubbell contends that the backup and resulting damage to her property proximately resulted from the negligent acts of Xenia's employees. R.C. 2744.02(B)(2). Hubbell complains that Xenia's employees were negligent in permitting the blockage of its sewer lines to occur. She further complains that additional damage occurred because Xenia's employee, Buckwalter, was negligent in responding to her call for emergency service.

{¶ 20} To show that it exercised reasonable diligence and care to keep its sewer lines open and free from the conditions that Hubbell alleges caused damage to her property, *Doud*, Xenia offered evidence showing that it performs an ongoing inspection and cleaning of its sewer lines. Hubbell did not offer evidence showing how Xenia's employees were negligent in inspecting and cleaning the Monroe Avenue sewer line. By implication, her contention is that Xenia's inspection and cleaning program was insufficient to avoid or prevent the loss she suffered.

{¶ 21} On this record, reasonable minds could find only that Xenia's inspection and cleaning program, because its design and performance involved "[s]ome positive exercise of judgment that portrays a considered adoption of a particular course of conduct in relation to an object to be achieved," *Addis v. Howell*, 137 Ohio App.3d at 60, 738 N.E.2d 37, constitutes an exercise of judgment or discretion that, per R.C. 2744.03(A)(5), renders Xenia immune from liability for any injuries to persons or property proximately resulting therefrom. The trial court erred when it denied the motion for summary judgment that Xenia sought on that defense.

{¶ 22} On the other hand, routine decisions requiring little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance, are not covered by the defense provided by R.C. 2744.03(A)(5). Id. Buckwalter's decision to not respond to Hubbell's first call for emergency service is of that character. His belief that the problem resulted from excess rainfall is an individual determination. Also, Buckwalter testified that he failed to respond to the call as he was required to do because he decided to instead wait for another call from Hubbell in order to show that the problem was serious before responding. Reasonable minds could find that Buckwalter's conduct was merely a routine decision portraying inadvertence, inattention, or unobservance, and therefore the defense provided by R.C. 2744.03(A)(5) does not bar Xenia's liability for any damage to Hubbell's property that proximately resulted from Buckwalter's alleged negligence.

{¶ 23} Xenia argues that, nevertheless, it is not liable for any damage that resulted from Buckwalter's alleged negligence. Xenia relies on our holding in *Bingham v. Fairborn* (April 17, 1980), Greene App. No. 1121, 1980 WL 352391, in which we wrote: "We do not believe there is a duty upon the city to maintain complete stand-by emergency service every time a householder phones that he has an overflow in the sewer system on his premises." Id. at *2. On that finding, we held that the city's failure to respond did not constitute actionable negligence.

{¶ 24} A duty of care may be imposed by operation of law or by contract. *Pittsburgh, F.W. & C.R. Co. v. Bingham* (1876), 29 Ohio St. 364; *Stark Cty. Agricultural Soc. v. Brenner* (1930), 122 Ohio St. 560, 172 N.E. 659. A contractual duty to act may be express or implied. *Hannan v. Ehrlich* (1921), 102 Ohio St. 176, 131 N.E. 504.

{¶ 25} When one undertakes a duty to perform an act, and another reasonably relies on that undertaking, the act must generally be performed with ordinary care. *Northwest Airlines, Inc. v. Glenn L. Martin Co.* (C.A.6, 1955), 224 F.2d 120. While a breach of contract is ordinarily not a tort, a common-law duty to perform with care, skill, reasonable expedience, and faithfulness is incidental to every contract, and the negligent failure to observe those conditions may constitute a tort. *Hunsicker v. Buckeye Union Cas. Co.* (1953), 95 Ohio App. 241, 53 O.O. 185, 118 N.E.2d 922. For a breach of that duty, a person injured as a proximate result has a right of action based on the contractor's failure to exercise due care in the performance of his assumed obligation. *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10.

{¶ 26} Municipal water and sewer service is typically provided to residents of the municipality pursuant to contract, and there is no basis to find that Xenia provided its service to Hubbell otherwise. Unlike *Bingham v. Fairborn*, where the city provided no emergency repair service or access to it, Xenia undertook to provide emergency services to persons to whom it provides sewer service, as well as access to that service by telephone. Implicit in that undertaking is a duty to perform the service with ordinary care. On this record, reasonable minds could find that through the acts or omissions of its employee, Buckwalter, Xenia was negligent in the service it provided Hubbell, and that as a proximate result, Hubbell suffered a loss to her property. Therefore, the trial court erred when it granted summary judgment for Xenia on that aspect of Hubbell's claim for relief.

{¶ 27} Xenia also argues that summary judgment was proper because the averments in Hubbell's complaint fail to allege that Buckwalter was negligent. We do not agree. Hubbell alleged that when the backup began, she dialed

Xenia's emergency service number and "[a]fter several hours had elapsed, an employee of the City finally showed up." Hubbell further alleged that due to the contamination that resulted from the backup, she was "left with an unhabitable, wet and contaminated residence without much of any personal property or furnishings." After incorporating those allegations, Hubbell alleged that the injuries to her property were proximately caused by the city's negligence. We believe those allegations satisfy the requirements of Civ.R. 8(A) for purposes of pleading Buckwalter's alleged negligence.

{¶ 28} Finally, Xenia argues that it is entitled to summary judgment on Hubbell's claim because, irrespective of Buckwalter's delay in responding, Hubbell failed to show that the backup of sewage into her home was not caused by a blockage in the sewer line connecting her property to Xenia's sewer system, for which Hubbell is responsible. Xenia points to evidence that upon examination, the public main on Home Avenue to which Hubbell's private line connects was open and free-flowing, which supports an inference that the cause of the backup was instead in Hubbell's private line.

{¶ 29} Xenia's contention involves a question of fact. On a motion for summary judgment, evidentiary facts and inferences reasonably drawn therefrom must be construed most strongly in favor of the party against whom the motion is made. Civ.R. 56(C).

{¶ 30} In opposition to Xenia's contention that the proximate cause of the backup was a blockage or other problem in her private line, Hubbell points to evidence that the Home Avenue main connects with Xenia's sewer main on Monroe Avenue, and that when the manhole cover on the Monroe Avenue main was removed, the backup of sewage into Hubbell's home promptly subsided. That fact, construed most strongly in Hubbell's favor, reasonably supports an inference that the condition of the Monroe Avenue main, which was at least partially blocked, in combination with the heavy rainfall to which Buckwalter testified, proximately caused the backup into Hubbell's home. That showing satisfied Hubbell's reciprocal burden under *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, "to set forth specific facts showing that there is a genuine issue for trial" concerning whether the backup was instead proximately caused by the condition of the private sewer line on Hubbell's property.

{¶ 31} The assignment of error is sustained in part and overruled in part. The judgment of the trial court is reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF, P.J., and DONOVAN, J., concur.